MONCURE, P.,
stated the case, and then proceeded:
I have been thus full in my statement of the testimony in the case in order that the questions arising in it may be the better understood, and I will' now proceed to consider those questions, which are' presented, as I have already said, by two bills of exceptions taken by the defendant to opinions given by the court during the progress of the trial. I will first notice the second bill of exceptions, which was taken to the opinion and action of the court in giving certain instructions of its own,instead of others asked for by the parties respectively. It will be unnecessary to take any notice of the instructions asked for by the plaintiff, as he took no exception, and the case was decided in his favor; but I will notice in detail the instructions asked for by the defendant, and those which were given by the court.
The instructions asked for by the defendant are four in number. The first asserts, that it was'necessary to join Mrs. Williamson in the suit as a co-defendant with her husband. But it was certainly not necessary. The contract was made by the husband in his own name, though for the benefit of his wife. She, being a married woman, could not herself make a contract binding upon her at law, nor could she make such a contract through the agency of her 'husband or anybody else. He was put in possession of the land, and has ever since continued to hold it, and was the proper, and only proper, person to be made a defendant in the action.
The second instruction asked for by the defendant is in these words: “That notwithstanding the stipulation in the contract with regard to said Williamson’s obtaining, at the then next term of the Circuit Court of Campbell or city of *Eynch-burg, a decree authorizing him to appropriate the trust property of his wife, derived from Mrs. Tabb, to the payment of said purchase money for said land, it was competent for the vendor to waive a literal compliance with said stipulation; and such waiver, if made, left the contract to stand as though the stipulation had not been inserted; and further, that the acceptance of the sum of $275 on the 9th January, 1862, as shown by exhibit C D; the demand from time to time thereafter made of the said Williamson for the instalments of purchase money due up to the bringing of the plaintiff’s first chancery suit in August, 1862, as all detailed by the witness A. M. Trible, Esq., if the jury believe his statements in relation thereto to be true; the bringing of the said suit by the plaintiff in August, 1862, claiming a. specific performance of the contract, &c. ; and his second suit for restraining waste in November, 1862; and the prosecution of both suits down to the present time; constituted a waiver of said stipulation, and was a continued assent and claim made by the plaintiff as vendor to hold the contract binding on the defendant as vendee and as a sale of the land; that under these circumstances, and while seeking to enforce the contract as a sale, the defendant, as trustee for his wife, was by its terms entitled to possession of the land, and the plaintiff has no right to disturb that possession by this proceeding.”
This instruction asserts, in point of fact, that at the time of the institution of the action, the defendant was in possession of the land in controversy by consent of the plaintiff under an executory contract of sale between them, which was then in full force and operation; and affirms, in point of law, that under these circumstances, the defendant, as trustee for his wife, was entitled to possession of the land, and the plaintiff has no right to disturb that possession by this proceeding.
*If the assertion of fact thus made had been true, the legal proposition thus affirmed as the consequence thereof would have been erroneous. A vendor of land, while the contract of sale remains executory, and before a deed is made to the purchaser, continues to be invested with the legal title, and (unless the provision in the Code ch. 135, '& 20, applies to the case, as it does not to this), may recover possession by an action at law, at least after making a demand of the possession, even though the vendee may be entitled in equity to a specific execution of the contract, and to have the action at law in the meantime enjoined. If it be said that there can be no such recovery at law without a previous demand of possession, it is a sufficient answer to say, that the absence of such a demand is not embraced as a term in the legal proposition affirmed, though there is abundant evidence in the record proving, *691 or strongly tending to prove, that such a demand was made.
But the fact asserted as the foundation of this legal proposition is untrue. The fact asserted is, that a literal compliance with the stipulation in the contract in regard to said Williamson’s obtaining, at the then next term of the Circuit Court of Campbell or city of Eynchburg, a decree authorizing him to appropriate the trust property of his wife, derived from Mrs. Tabb, to the payment of said purchase money for said land, was waived by the plaintiff, which waiver left the contract to stand as though the stipulation had not been inserted. It affirms that it was competent for the vendor to make such a waiver, and that the acts detailed in the instruction constituted a waiver of said stipulation, and amounted to a continued assent and claim of the plaintiff as vendor to hold the contract binding on the defendant as vendee, and as a sale of the land.
It is not pretended that there was an3' written waiver of *the said stipulation, or any other waiver than what is imported by the acts detailed in the instruction. Even if there had been a parol agreement, however express, for such a waiver, it would have been of no effect at law, and could have been enforced in equity only on the ground of part performance.
But do the acts detailed constitute such a waiver, and amount to a continued assent and claim of the plaintiff as vendor, to hold the contract binding on the defendant as vendee and as a sale of the land? I think not.
By the express terms of the contract, the sale was conditional only, the condition being that the defendant should obtain at the next term of the Circuit Court of Campbell county, or of the city of Eynchburg, which terms it seems were in May and June, 1860, a decree authorizing him so to change and invest the fund in his hands as trustee aforesaid, as to guaranty and carry into full and legal effect the agreement on his part; and it was agreed between the parties, that should the (Jefendant fail to obtain such a decree at the time aforesaid, then and in that event the defendant should occupy and use the property as tenant of the plaintiff, trustee as aforesaid, for the period of one year, from the 1st day of May, 1860, and the cash payment of $260 was to be retained as rent for that year. The defendant having failed to perform the condition, he became tenant of the plaintiff for a single year; at the expiration of which, to wit, on the 1st of May, 1861, the plaintiff was entitled to the possession of the land and to recover it in an action of unlawful detainer. Although the plaintiff was so entitled, yet Mrs. Buckner, the beneficiary for life under the deed by which the land had been conveyed to him as trustee, was still anxious that the sale should be made, notwithstanding the breach of the condition by the defendant; and the latter was just as anxious to make the purchase. In consequence of this mutual *anxiety, the defendant was permitted, for a while after the condition was broken by him, to retain possession of the land, and the negotiations between her’ and the defendant in regard to the payment of the deferred instalments of the purchase money, referred to in the deposition of her attorney Mr. Trible, and the other transactions mentioned in the instruction took place. While this mutual anxiety existed, to wit, on the 9th of January, 1862, the bonds for the sum of $275 referred to in the instruction were received by Mrs. Buckner from the defendant, and a receipt was accordingly given therefor. But it was plainly not intended by Mrs. Buckner, or her counsel Mr. Trible, by this transaction, or any other which the record discloses, to waive the forfeiture of the contract, even if she had had the power to do so — which she had not; the contract having been made by her trustee, who only had the power to sell the land. Mr. Trible, in his deposition, says: “I told him (the defendant) repeatedly that the contract on his part had been forfeited, because he had failed to obtain a decree at the time specified in the contract, but at the same time urged |him still to obtain the decree, and that I had no doubt Mrs. Buckner would be satisfied. Nothing having been done, however, I said to him, some time before the June term of the Circuit Court at Tynchburg for 1862, that Mrs. Buckner would not wait any longer than that court for the decree to be obtained, and Williamson promised to see his attorney Mr. Mosby, and have the decree (at that court, if possible.”
It was not obtained at that court, and never has been obtained. It does not appear that after that time any application was ever made by Mrs. Buckner or her attorney to the defendant for any part of the purchase money.
The two chancery suits brought by the plaintiff, one of them in August and the other in November, 1862, and referred to in the instruction, do not, either in themselves *or in connection with the other matters referred to in, the instruction, constitute any waiver of the stipulation aforesaid. The defendant having forfeited his contract by not obtaining a decree at the time specified,- and having taken no step to obtain such a decree thereafter, though he continued to hold and enjoy the land, the plaintiff, to bring the matter to a close, filed the bill in August, 1862, which(is called in the instruction a bill for specific performance. He was willing, it seems, even at that late period, to make the sale if the purchase money could be secured to him. But he wanted either the land or the money, or security for payment of the money, and he therefore prayed for alternative relief accordingly. It is manifest that the plaintiff did not intend, by the said bill or otherwise, to waive the benefit of any stipulation contained in the contract. It was expressly provided in the contract thd!t it was not to be binding on the plaintiff until the defendant obtained a *692 decree as aforesaid, and the said bill charges, that the defendant has utterly failed to comply with any part of said contract, except the payment of the $260, although the plaintiff complied with his part by putting the defendant in possession of the premises, but still holds possession of the same, refusing to comply with the terms of the said contract, or restore the possession of the land to the plaintiff. And the bill further represents, that the defendant “is himself insolvent, and cannot make or secure said paj'ments, and he is doubtful whether a court of equity would authorize the appropriation of the property which he holds in trust, or its hires and profits, to the purchase of the said tract of land. ’ ’ The most that can be said is, that while the plaintiff had made but one contract with the defendant in regard to the sale of the said land, which had been forfeited as aforesaid, yet the plaintiff was willing, even down to the time of the filing of the said bill, to sell and convey the said land to the defendant *at the price to be secured and paid as mentioned in the contract. But he knew that the defendant, being insolvent, was himself wholly unable to make or secure the payments, and he did not believe that a court of equity would then make such a decree as the contract required. The chief, if not the only, object of the suit, therefore, was to recover possession of the land. That the defendant himself so regarded the object of the suit is shown by the paper marked B C, signed by him, and dated 17th October, 1862, in which he says: “A suit having been, instituted by J. G. Paxton trustee, for the recovery of Oakland, the estate bought by me of said Paxton, I have to state, that I am prepared to pay,” &c. “If this be not satisfactory to the parties, that is, to Mrs. R. E. M. Buckner, for whose benefit the sale was made, rather than a suit should be prosecuted for the recovery of the possession, I agree to surrender the possession of the said estate at the end of the present year.” Shortly after the date of that paper, Mrs. Buckner announced to the defendant her determination to take back the land, in accordance with the proposition contained in the said paper; but he then declined to give it up, saying that, by the terms of the original contract, he had the right at anjr time to pay the whole amount of the purchase money for- the land, and that he had determined to do so. Very soon after this conversation, the second suit in chancery referred to in the said instruction was instituted, being the' suit to restrain waste. In the bill in that suit, the plaintiif refers to his former suit as having been brought to declare the contract void, and compel the restoration of the possession of "said tract of land; states that the said paper marked B C was executed to avoid the further prosecution of that suit; charges that his said cestui que trust is unwilling to reinstate saidt contract in any form or shape-; anil claims the ^'surrender of the land on the 1st of January, as stipulated in the said paper.
It does not appear that any answers were ever filed, or anything else was ever done in these suits, except that Mr. Trible’s deposition seems to have been taken in one of them, and except that the first of them was dismissed on the day- of the trial of this action, but before it commenced. It appears that always, since October, 1862, Mrs. Buckner has been unwilling that the land should be sold to the defendant, and has claimed to have it restored to her. In November of that year it was actually advertised in the newspapers, in the name of the plaintiff as trustee, for sale at public auction in the city of Bynchburg, on the 15th of December following; but being threatened with an injunction by the counsel of Mrs. Williamson, the trustee declined to make the sale, and afterwards, to wit, on the 2d of January, 1863, he instituted this action. I think the court properly refused to instruct the jury that the transactions detailed in the instruction “constituted a waiver of said stipulation, and was a continued assent and claim made by the plaintiff as vendor, to hold the contract binding on the defendant as vendee, and as a sale of the land; that under these circumstances, and while seeking to enforce the contract as a sale, the defendant, as trustee for his wife, was by its terms entitled to possession of the land, and the plaintiff has no right to disturb that possession 'by this proceeding. ”
The defendant’s third instruction is in effect the same with the sixth instruction given by the court.
The fourth and last instruction asked for by him is in these words: “That if the jury believe the contract A No. 1 was forfeited by the failure of said Williamson to comply literally with the stipulation as to obtaining the decree aforesaid, subjecting his wife’s trust estate to the *payment of the purchase monej- of the land in controversy, and that such forfeiture was not waived by the plaintiff; then the plaintiff, by allowing him to hold the premises over after the 1st of May, 1861, and accepting rent from said Williamson therefor, constituted him (on the- terms of stipulated rent from 1st May, 1860, to 1st May, 1861,) a tenant from year to year, commencing on the 1st May, 1861; and the defendant having held for the year commencing 1st May, 1861, and ending 1st May, 1862, and then again. having held over from the 1st May, 1862, was entitled as such tenant to hold for the year following, to wit, till 1st May, 1863, and so from year to year until the tenancy should be ended by notice given according to law; and that no such notice having been given, the defendant, at the bringing of this proceeding, (in January, 1863,) was lawfully in possession of the land, and the plaintiff not entitled to recover the possession thereby. ’ ’
The substance of this instruction is, that if there was a forfeiture of the contract of *693 sale, and the forfeiture was not waived, the plaintiff, by allowing' the defendant to hold over after the 1st of May, 1861, and accepting rent from him, made him a.tenant from year to year until the tenancy should be determined by a notice to quit; and no such notice having been given before the action was brought, he was not entitled to recover.
It is true that if a tenant for a fixed term holds over after the expiration of the term, with the consent of the lessor, he is regarded as a tenant from year to year on all the terms of the original lease which are applicable to such a tenancy. The law favors such a tenancy, and infers it from such a holding over, in the absence of evidence to the contrary. And if that principle applied to this case, as supposed by the instruction, the conclusion to which it comes would have been proper.
*But there are several defects in the premises, which prevent the application of that principle to the case, and the conclusion, therefore, falls with its foundation.
The instruction assumes as matter of fact, without referring the question to the jury, that the plaintiff allowed the defendant to hold the premises over after the 1st of May, 1861, and also accepted rent from him therefor. Now if the evidence on these questions of fact can be considered as conflicting — which is the most favorable view to be taken of it for the defendant — still the court would have erred in assuming the facts, and instead thereof ought to have based its instruction on the hypothesis of the truth of the facts, which would thus have been referred to the jury. It may be doubtful whether the evidence as to these facts is even conflicting, and whether it is not altogether in favor of the plaintiff. There is no evidence which expressly or directly shows, or tends to show, that the plaintiff did allow the defendant to hold over, much less accept rent of him after the 1st of May, 1861, unless it can be said that the bills in chancery filed by him as before mentioned can have that effect. But they rather repudiate than show a tenancy from year to year. They show a wrongful possession under a violated contract of sale, and their main object, or that of the first of them, is to recover possession of the land. As to what is called an acceptance of rent after the 1st of May, 1861, that was the act of Mrs. Buckner, and not of the plaintiff. She signed the receipt for it in her own name, not professing to act as his agent, and there is no proof that she was. It is argued that she was tenant for life of the trust subject, and had a right to receive the rent. She certainly had not a right to sell the trust subject, nor to interfere with the sale of it by the trustee, who had such right. When he, in the exercise of his undoubted power, made a contract bf sale, and put the purchaser in possession under *it, how could she, by any unauthorized dealing with the purchaser, entitle him to hold the land against his vendor after forfeiting his right to the possession by violating the contract of sale? Can such a vendee deny the title of his vendor, and set up an adverse claim acquired while he was in possession under the vendor? It is said that it may be inferred, from the relation of the parties and the facts of the case, that she was the vendor’s agent. Even if this were so, which is not admitted, still the inference could only be made as matter of fact, and not as matter of law. All the evidence on which this instruction is founded (with the exception, perhaps, of the bills aforesaid) is furnished by the testimony of Trible and the papers filed with his deposition, the execution of which was obtained by him; and he testifies, that he never had any authority from the plaintiff to modify or renew the contract, or to receive any part of the purchase money mentioned therein, and that all the interviews mentioned by him as having been had with the defendant were had by him as the agent of Mrs. Buckner, and sometimes without any previous conversation with her in regard to the subject matter thereof.
But there is still another and greater defect in this instruction. It asserts that the plaintiff, by allowing the defendant to hold the premises over after the 1st of May, 1861, and accepting rent from him therefor, constituted him a tenant from year to year, and entitled him to continue to hold as such tenant until the tenancy was determined by a notice to quit; that is, by six months’ notice to quit.
Now it is a mere presumption of law, in the absence of evidence to the contrary, that a tenant who holds over after the expiration of his term by permission of the lessor is a tenant from year to year. But this presumption may *be repelled by evidence, which may show that the holding over, though by permission as aforesaid, is not as tenant from year to year, but in some other character, or'for some other purpose. And such clearly is the case here.
Palpably, it was never intended that the relation of landlord and tenant should exist between the plaintiff and defendant, except as a mere incident to the contract of conditional sale. The defendant was insolvent, and the plaintiff would never have sold or rented land to him, much less a trust estate, upon his own responsibility merely. Hence it was that, when he made with him the contract of conditional sale and put him in possession, he took care to require the payment down of so much of the purchase money as would be equivalent to one year’s rent, and to require the decree to be obtained within that year to sanction the purchase for the benefit of the cestui que trusts of the defendant, and to appropriate so much of the trust fund as was necessary for the security and payment of the deferred j instalments of the purchase money. If | such decree should not be obtained at the i stipulated period, then the defendant was to be the tenant of the plaintiff for a single *694 year for the rent already paid him. The defendant, having- ■ failed to comply with the express condition of the sale, forfeited the contract, and was bound by its terms to surrender possession at the end of the year of his tenanc3r. If, instead of doing so, he held over by sufferance of the plaintiff, who still hoped and urged that he would soon obtain the decree, can it be inferred therefrom that such holding over by the defendant was as tenant from year to year? Both parties were then anxious that the sale should be made. The plaintiff wished to sell, and the defendant wished to purchase. The defendant, no doubt bona fide, intended very soon to obtain the decree; and the plaintiff, trusting in him, suffered the land to remain in his possession, *to give him an opportunity in the meantime of obtaining the decree — ■ the plaintiff knowing or believing that he could at any time resume the possession. This possession of the defendant having continued until January, 1862, bonds to the amount of $275 were then delivered by him to Mrs. Buckner, who gave her receipt therefor, stating that when collected they were “to be applied to the payment of rent due by said Williamson for Oakland for the year ending 1st May, 1862, should the agreement for the sale of the said property, ■ &c., not be carried out; if said agreement is executed and carried out, then to be held by me as so much money received in payment of said property.” Now if the plaintiff can be held responsible for that receipt, it cannot have the effect of making the defendant a tenant from year to year, but at most can only make him tenant for a year ending May 1st, 1862. The defendant having occupied the property by sufferance for the greater part of that year, it was just that he should pay a year’s rent for it, on condition that he was permitted to hold it till the end of the year. But it would be very unjust to give to this transaction the effect of making the defendant a tenant from year to year. Certainly no such effect was in the contemplation of the parties. The plaintiff never recognized his defendant as his tenant except upon the terms of paying down the rent; and then only for the term for which the rent was paid. The defendant was as much a wrongdoer in holding over after the 1st of May, 1862, as he was in holding over after the 1st of May, 1861; and to infer from such holding over a tenancy from year to year, would be to infer a right from a wrong.
The foregoing reasons satisfy me that the court did not err in refusing to give the defendant’s fourth instruction. And now let us consider the instructions which were given by the court.
*The first three of these instructions are unexceptionable, and it is unnecessary to notice them any further. The fourth is in these words: “That if, from the testimony, the jury should believe the contract for the sale became void by reason of the failure of the defendant to do what, according to the foregoing instructions he was required by said contract to do, and that therefore he became the tenant of the plaintiff, his tenancy expiring the 1st day of May, 1861; that the plaintiff had the right to maintain this action against the defendant at any time within three years after the said 1st of May, 1861, without giving notice to the defendant to quit, notwithstanding the said defendant continued in possession of the premises for more than one year, unless subsequently to said 1st of May, 1861, and before the bringing of this suit, the said tenancy became a tenancy from year to year; and that even if the payment of rent was made by the defendant to the plaintiff on the 9th of January, 1862, instead of to Mrs. Buckner, under the circumstances, according to the terms set forth in the receipt marked XX, signed by Mrs. Buckner, such pajrment of rent, under such circumstances, and according to such terms, was not such a payment and receipt of rent as to make the said tenancy a tenancy from year to year, so as to require notice from the plaintiff to the defendant to quit before he could maintain this action, and according to the legal import of said receipt said tenancy ceased the 1st day of May, 1862, and that after that time the plaintiff’s right of action accrued.”
The proposition, asserted by this instruction is, that the contract of sale and breach of the condition only made the defendant a tenant for a single year, expiring on the 1st of May, 1861, and his holding over thereafter did not of itself make him a tenant from year to year; that if the payment of the rent for the next year, made to Mrs. Buckner on the 9th of January, 1862, according to the receipt *given by her on that day as aforesaid, can be considered as a payment to the plaintiff, it only made the defendant a tenant for another single year, ending on the 1st of May, 1862, and his holding over thereafter did not of itself make him a tenant from year to year, so as to require notice from the plaintiff to the defendant to quit, and that after that time the plaintiff’s right of action accrued.
I can see no error in this instruction, construing it as we ought and as the jury must have done, in connection with the context and the res gestae. The defence on which the defendant mainly relied to defeat the plaintiff’s action was, that he was a tenant from year to year when the action was brought, and had not received the six months’ previous notice to quit, to which such a tenant is entitled, and to that de-fence the fourth instruction asked for by him directly pointed. He made no point in his instructions, as his counsel did in arguing before this court, that before a vendor can maintain an action for possession against his vendee, the latter’s right of possession must in general be determined by a demand and refusal. He did maintain before the court and jury, as his second instruction shows, that, according to the facts of the case, the contract of sale was a subsisting, executory contract, under *695 which he was entitled to possession; but that defence did not involve the question of notice to quit, or of demand and refusal. Therefore the court, refusing to give the instructions asked for by the parties, and undertaking to cover the same ground by its own instructions, propounded the fourth in the series as a substitute for the defendant’s fourth. Both have reference to a tenancy from year to year and the notice to quit, which is incident to such a tenancy, and neither has any reference to the relation of vendor and vendee, or the question as to the necessity of a demand and refusal, to determine the vendee’s right of possession. The defendant’s instruction maintains, that *he is a tenant from year to year, and not having received any notice to quit, no right of action ever accrued to the plain tiff. The court’s instruction takes the ground, that the defendant was not a tenant from year to year, but only for a single year, ending either on the 1st of May, 1861, or 1st of May, 1862, and that, after that time, the plaintiff’s right of action accrued, without any notice to quit.
But the plaintiff’s counsel in this court argues, that the court’s instruction, in effect, also decides that if the relation of the parties was that of vendor and vendee, instead of that of landlord and tenant, the plaintiff may maintain his action without any proof of a previous demand and refusal. As this question more directly arises under the seventh instruction given by the court, I will defer any other remarks upon it until X come to that subject. As I have already said, I think there is no error in this instruction.
The fifth and sixth instructions given are unexceptionable. The seventh and last is in these words: “That the filing by the plaintiff of the bills No. 1 and No. 2, which were in evidence before the jury, do not affect the plaintiff’s right to recovery in this case.”
These bills were not offered in evidence to show that the plaintiff was prosecuting two remedies at the same time for the same cause of suit, the one in equity and the other at law, and therefore that the remedy last commenced, to wit, the action at law, cannot be maintained. Such a defence could only have been made, in the action at law, by a plea in abatement, if at all; and there was no such plea. Besides, the first bill was dismissed before the trial was commenced, which would have rendered such a defence unavailable, if it would otherwise have been available, under the general issue. But it seems that such a defence could not have been made at all at law, even if the causes of suit had been the same, and the suit in equity had been spending at the time of trial; and that the proper mode of making the objection would have been by a rule in the chancery suit to put the plaintiff to his election between the two suits.
The object of the defendant in offering these bills in evidence was to show, that at the time the action was brought he was lawfully in possession of the land in controversy as vendee of the plaintiff, who was then prosecuting a suit in chancery for the specific execution of the contract of sale. And the defendant contended, that being thus lawfully in possession, there could be no recovery against him in this action, which is founded on the right of the plaintiff to such possession, and that before such an action can be maintained against him, his right of possession, or rather his lawful possession, must be determined by a demand and refusal or otherwise.
The authorities ¡cited by the learned counsel for the plaintiff in error (defendant in the court below) seem fully to sustain his legal proposition, that one who is put in possession upon an agreement for the purchase of land can not be ousted by ejectment before his lawful possession is determined by demand of possession or otherwise. Right v. Beard, 13 East’s R. 210; Doe v. Jackson, 1 Barn. & Cres. 448, 8 Eng. C. L. R. 126. The action of unlawful de-tainer stands on the same footing in this respect with the action of ejectment, and is alike founded on the plaintiff’s right of possession at the time of the institution of the action, except that where the plaintiff was turned out of possession by the forcible or unlawful entry of the defendant, he may regain the possession by an action for the forcible or unlawful entry without regard to the question of title or right of possession. Code 608, ch. 134.
But the record is full of evidence to show, and especially do the bills show, that when the action was brought the defendant was wrongfully in possession of the land, *and had been for a long time previously thereto, and that the plaintiff was then entitled to the possession. They show, that if any demand and refusal were necessary to determine any right of possession of the defendant, there had been such demand and refusal. The bills themselves were such a demand, and the failure of the defendant to comply with this demand was such a refusal. The fact is, the defendant never had any right of possession, except for a single year, under the contract of sale, or for the next year under the arrangement made with Mrs. Buckner by the assignment of bonds in January, 1862, if the plaintiff can be considered as bound by that arrangement. The utmost effect which that arrangement could have had was, to set up by parol the contract of sale for another year upon the payment or security of what was equivalent to a fair rent for that year. And when the condition of this parol arrangement was broken by a failtire of the defendant to obtain a decree within the year, and when that year was ended, the defendant had no longer any right, or semblance of right, to the possession of the land, and the plaintiff, without any previous demand or refusal, had a right of action to recover such possession. There is no evidence in the record tending to show that, after the arrangement aforesaid *696 in January, 1862, there was ever any contract, in writing- or by parol, or any understanding or transaction, between the plaintiff and defendant, or Mrs. Buclcner and the defendant, which could give to the defendant any right, or color of .right, to the possession of the land after the expiration of the tenancy for the second year as aforesaid. That the plaintiff did not bring his action immediately thereafter, nor until the January following, and that the defendant in the meantime actually occupied the land against the will or by the mere sufferance of the plaintiff, can make no difference. A wrong, however long continued, can never mature into a right, *except under the statute of limitations, or the presumptions arising from lapse of time, which do not apply to this case. In this state of things these bills are filed, which, so far from admitting any right of possession in the defendant, show that he is wrongfully in possession, and seek to recover it of him. The first bill showed that he wrongfully withheld the land, and the second showed that he was committing waste upon it. That the defendant himself regarded the first bill as having been instituted for the recovery of the land, I have already fully shown. The plaintiff, being wearied out with the matter, filed his bill to have it ended. He was willing, it seems, even then to receive the money, or security for it, but did not believe it would or could be paid or secured, and therefore demanded the land. It does not appear that the defendant, though duly served with process to answer this bill, took any notice of it. And at all events, it cannot amount to any admission of. his right to the possession of the land. The second bill expressly declares, that the plaintiff “is unwilling to reinstate said contract in any form or shape, but claims the surrender of the land on the 1st of January” following, which was before the institution of the action.
I am, therefore, of opinion, that the court did not err in instructing the jury that the filing of these bills “does not affect the plaintiff’s right to recover in this case.
The only remaining question in the case arises on the first bill of exceptions, and is as to the admissibility of the receipt therein mentioned; being the receipt of A. Alexander “for account Mrs. R. E. Buckner, November 9th, 1861,” for 134.77, eight months’ interest on $869.20, the second instalment of the purchase money of said land. There is no evidence whatever in the record to connect the plaintiff with this receipt, nor is there any evidence in the record that Mr. Alexander was authorized; even by *Mrs. - Buckner, to give it. But the question is of no consequence, and could not affect the result of the case.
I am of opinion, that there is no error in the judgment, and that it be affirmed.
JOYNBS, J., concurred in the opinion of Moncure, P.
Judgment affirmed.